UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CAMERON HOPKINS,

                Plaintiff,

    v.

SEAN E. YI, JACKYMOON CORP.,
GREENMAN-PEDERSEN, INC., J.H.
LYNCH & SONS, INC., and HILL &
SMITH, INC.,

                Defendants.

CIVIL ACTION

NO. 4:18-cv-40197-TSH

REPORT AND RECOMMENDATION

January 26, 2021

Hennessy, M.J.

This Report and Recommendation issues pursuant to District Judge Hillman's referral of

J.H. Lynch & Sons, Inc.'s ("J.H. Lynch's") motion to file a third-party complaint against Northeast

Traffic Control Services, Inc. ("NTCS"), which is fully briefed and ripe for adjudication.  [Dkt.

No. 129].  For the reasons that follow, the undersigned RECOMMENDS that J.H. Lynch's motion

pursuant to Fed. R. Civ. P. 14(a) be ALLOWED in part and DENIED in part.[1]

I.      FACTUAL BACKGROUND

At approximately 3:30 p.m. on September 12, 2018, Sean E. Yi ("Yi"), an employee of

Jackymoon Corp. ("Jackymoon"), was driving north on Route 146 through Millbury,

Massachusetts in a tractor trailer owned by Jackymoon.  [Dkt. No. 68 ("Am. Compl.") ¶¶ 2–3, 15–

---

[1] While the motion was referred to the undersigned for decision pursuant to Fed. R. Civ. P. 72(a), in order to address any concern that the January 20, 2021 letter of Attorney Shaughnessy influenced a decision on the merits, [Dkt. No. 139], the undersigned has prepared instead a Report and Recommendation for consideration by Judge Hillman in accordance with Fed. R. Civ. P. 72(b)(1).

16].  At the time, that area of Route 146 was undergoing bridge and construction repairs.  [Id. ¶ 11].  The Massachusetts Department of Transportation ("MassDOT") engaged J.H. Lynch & Sons to "oversee and carry out" the construction, and Greenman-Pedersen, Inc. ("Greenman-Pederson"), a design and engineering firm, to oversee J.H. Lynch.  [Id. ¶¶ 12, 13].  Defendant Hill & Smith, Inc. manufactured and supplied temporary barriers.  [Id. ¶ 14].  Yi was operating the tractor trailer at a speed in excess of the posted limit in the construction zone, and unsuitably for the weather and road conditions.  [Id. ¶ 17].  As a result, Yi lost control of the tractor trailer, which crashed into the barriers separating the north and southbound traffic on Route 146.  [Id.]  Upon impact, several hundred feet of the barrier tipped over, resulting in the tractor trailer veering into the opposite lane.  [Id. ¶ 18].  At the same time, Plaintiff was driving southbound on Route 146 in a vehicle owned by his father.  [Id. ¶¶ 1, 15].  After the Jackymoon trailer crossed the median, it collided with Plaintiff's car.  [Id. ¶ 18].  Plaintiff suffered severe and permanent injuries, including paraplegia and a left leg amputation above the knee.  [Id. ¶ 23].

Three years prior to the September 12, 2018 accident, J.H. Lynch engaged NTCS to purchase the temporary zone guard barriers. [Dkt. No. 126-1 ("Third Party Compl.") ¶¶ 1,2,8]. Thus, NTCS acted as J.H. Lynch's supplier of the barriers. [Dkt. No. 126-2 ("Purchase Order") at 1]. The Purchase Order for the barriers included an indemnity clause, which stated:

> To the fullest extent permitted by law, [NTCS] shall indemnify, hold harmless and defend [Lynch] and the Owner, their agents and employees, from any and all injuries, claims, damages, losses and expenses (including but not limited to attorney's fees), directly or indirectly, arising out of or in connection with the performance of [NTCS'] work or materials furnished under this Purchase Order, provided that such claim, damage, loss or expenses results from bodily injury, sickness, disease or death to any person(s) or the destruction of tangible property but only if the claim, damage, loss, or expense is caused by or resulting from the act or omission of [NTCS], [NTCS'] subcontractors, or anyone directly or indirectly employed by any of them, for whose acts they may be liable.  [NTCS] shall not be required by this Purchase Order to indemnify [Lynch] or the Owner for that portion of any loss that is directly attributable to the negligence of [Lynch] or

Owner, respectively, except to the extent that such indemnification is permitted by law. [NTCS] expressly agrees to assume the cost of attorneys' fees for defense of [Lynch] and/or Owner by their own counsel for any claim, proceeding, lawsuit, and/or litigation arising out of any accident, incident or occurrence caused by, or in any way related to the performance of [NTCS'] work or materials furnished. [NTCS] agrees that the obligation to defend commences when a claim is made against [Lynch] or Owner, their agents and employees, even if [NTCS] disputes its obligations to indemnify and hold harmless.

[Id. ¶ 10].   On September 11, 2020, J.H. Lynch sent a tender letter to NTCS, seeking indemnification in connection with the accident.  [Dkt. No. 126 at 4; Dkt. No. 126-3].  On October 12, 2020 First Mercury Insurance Company, NTCS' excess insurance carrier, sent J.H. Lynch a letter denying its tender.  [Dkt. No. 126 at 4; Dkt. No 126-4].  NTCS' primary insurance carrier did not respond to J.H. Lynch's tender.  [Dkt. No. 126 at 4].

## II.   PROCEDURAL BACKGROUND

Hopkins filed this action against Sean Yi and Jackymoon Corp. on November 11, 2018. On August 19, 2019, the court consolidated this case with Ferreira v. Yi, et al., No. (1:19-CV-40045-TSH) for discovery purposes only.  [Dkt. No. 49].  On February 28, 2020, Hopkins amended his complaint, adding J.H. Lynch, Greenman-Pederson, and Hill & Smith as defendants.  [Dkt. No. 68].  J.H. Lynch answered on April 22, 2020, and submitted this motion to file a third party complaint on November 5, 2020.  [Dkt. Nos. 86,125].  NTCS filed an opposition on November 19, 2020.  [Dkt. No. 128].  J.H. Lynch filed a reply on December 2, 2020.  [Dkt. No. 130].

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 14(a) states "[a] defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."   The claim is proper only if "the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defendant."  R.H. v. Lorilee I, LLC, No. 15-CV-30204, 2016 WL 7105870, at *4 (D. Mass. Nov.

14, 2016) (quoting <u>Katz v. Denn</u>, No. 05-CV-40014, 2007 WL 763896, at *6 (D. Mass. Mar. 12, 2007)).  A district court has discretion in deciding whether to grant the claim, but "should allow impleader on any colorable claim of derivative liability that will not unduly delay or otherwise prejudice the ongoing proceedings." <u>Lehman v. Revolution Portfolio LLC</u>, 166 F.3d 389, 393 (1st Cir. 1999).  "Ultimately, '[a] district court must oversee third-party practice with the core purpose of Rule 14(a) in mind: avoiding unnecessary duplication and circuity of action.'" <u>Brettell v. Omron Sci. Techs., Inc.</u>, No. 14-CV-13936, 2016 WL 11660535, at *1 (D. Mass. May 10, 2016) (quoting <u>Lehman</u>, 166 F.3d at 393).  A third-party complaint is treated like a complaint under Rule 8(a) in all respects.  <u>See</u> Wright & Miller, <u>Federal Practice and Procedure</u> § 1455 (3d ed. 2020).

Recovery under 14(a) "depends at least in part upon the resolution of the primary lawsuit . . . Its relation to the original complaint is thus not mere factual similarity but logical dependence." <u>Owen Equipment & Erection Co. v. Kroger</u>, 437 U.S. 365, 376 (1978) (internal citations omitted). "Impleader places the burden on the third-party plaintiff to show that if it is found liable to the plaintiff, then the third-party defendant will in turn be liable to the third-party plaintiff." <u>Mass. Laborers' Health & Welfare Fund v. Varrasso</u>, 111 F.R.D. 62, 63 (D. Mass. 1986).

IV.    ANALYSIS

In its proposed third-party complaint, J.H. Lynch alleges four claims: (1) contribution; (2) contractual indemnity; (3) breach of contract, and (4) a request for declaratory judgment.[2]  The undersigned will address three of these claims in turn.

---

[2] Neither party addresses the claim for declaratory judgment in their filings.  Accordingly, the court shall not address the claim here.  <u>See</u> <u>Perkins v. City of Attleboro</u>, 969 F. Supp. 2d 158, 177 (D. Mass. 2013) (deeming a claim waived when a party failed to address it in its opposition).

A.  <u>Contribution</u>

J.H. Lynch has properly stated a claim for contribution in its complaint.  Mass. Gen. Laws. ch. 231B §1(a) states "where two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them."  Mass. Gen. Laws. ch. 231B §1(a).  "The right to contribution is available only 'where two or more persons become jointly liable <u>in tort</u>.'"  <u>Woods Hole Oceanographic Inst. v. ATS Specialized, Inc.</u>, No. 17-CV-12301, 2020 WL 1452579, at *13 (D. Mass. Feb. 10, 2020), <u>report and recommendation adopted</u>, No. 17-CV-12301, 2020 WL 1446845 (D. Mass. Mar. 24, 2020) (quoting <u>Dighton v. Federal Pacific Elec. Co.</u>, 399 Mass. 687, 691 (1987) (emphasis in original)).

Because claims of contribution sound in tort, the question is whether NTCS could be held liable to Hopkins through its contract with J.H. Lynch.  "[A] defendant under a contractual obligation 'is liable to third persons not parties to the contract who are foreseeably exposed to danger and injured as a result of its negligent failure to carry out that obligation.'"  <u>LeBlanc v. Logan Hilton Joint Venture</u>, 463 Mass. 316, 328 (2012) (quoting <u>Parent v. Stone & Webster Eng'g Corp.</u>, 408 Mass. 108, 114 (1990)).  "Liability will be imposed, however, only if it is foreseeable that the defendant's work, if negligently performed, may cause harm to third parties."  <u>Hayes v. CRGE Foxborough, LLC</u>, 167 F. Supp. 3d 229, 246 (D. Mass. 2016) (quoting <u>Trotman v. Massachusetts Bay Transp. Auth.</u>, No. 09–CV–04649, 2014 WL 1758103, at *2 (Mass. Super. Ct. Mar. 3, 2014)).

The proposed complaint sufficiently alleges that NTCS had a contractual duty to supply J.H. Lynch with temporary barriers that would protect persons using the highway during construction.  [<u>See</u> Third Party Compl. ¶¶ 7–13].  Further, NTCS represented in a certificate of

compliance that the barriers it provided for this specific project satisfied "the requirements of the pertinent project plans" and "specifications of the Massachusetts Highway Department, in all respects." [Dkt. No. 131 at 1].  Hence, NTCS was on notice that the construction would occur on a highway and that the barriers were intended to protect highway safety during construction.  J.H. Lynch alleges that NTCS supplied "defective" barriers. [Third Party Compl. ¶ 16].  It is reasonably foreseeable that furnishing defective barriers for such a project would expose travelers to harm and serious injury.  Accordingly, as to the claim for Contribution, the proposed third-party complaint is sufficient and leave to file should be allowed.

     B.  <u>Contractual Indemnification</u>

J.H. Lynch next asserts a claim for indemnity based on the indemnity clause in its Purchase Order.  NTCS asserts that the indemnity provision is void under Mass. Gen. Laws ch. 149 § 29C.  The undersigned finds the indemnity clause valid.  In relevant part, Section 29C states:

> Any provision for or in connection with a contract for construction, reconstruction, installation, alteration, remodeling, repair, demolition or maintenance work, . . . including without limitation any road, bridge, tunnel, sewer, water or other utility line, which requires a subcontractor to indemnify any party for injury to persons or damage to property not caused by the subcontractor or its employees, agents or subcontractors, shall be void.

Mass. Gen. Laws ch. 149, § 29C.  An indemnity clause is enforceable if coverage is limited to injury caused by the indemnifying party.  <u>See</u> <u>Spellman v. Shawmut Woodworking & Supply, Inc.</u>, 445 Mass. 675, 680 (2006); <u>Spaulding v. Beacon Hotel Corp.</u>, 42 Mass. App. Ct. 923, 924 (1997); <u>see also</u> <u>Sheehan v. Modern Cont'l/Healy</u>, 62 Mass. App. Ct. 937, 937 n.2 (2005) ("The indemnity agreement contains a 'savings' clause limiting its scope '[t]o the fullest extent permitted by law.' This language permits its enforcement to the extent permitted by G.L. c. 149, § 29C.").  "The focus of the inquiry is on the language of the indemnity agreement itself and not the facts of the alleged

incident." Mullin v. Keller Ladder Co., No. 06-CV-480, 2008 WL 11509800, at *9 (D.N.J. Mar. 19, 2008) (applying Massachusetts law); Bjorkman v. Suffolk Const. Co., 42 Mass. App. Ct. 591, 592 (1997).

The plain language of the indemnity provision at issue obligates NTCS to indemnify J.H. Lynch for conduct NTCS caused.  The clause allows indemnification "[t]o the fullest extent permitted by law," which properly limits the clause to indemnify J.H. Lynch for actions caused only by NTCS.  See Spaulding., 42 Mass. App. Ct. at 924.  Further, the clause provides that the Purchase Order covers claims "caused by or resulting from the act or omission of [NTCS]." [Purchase Order ¶ 10].  This language is within the prescriptions of Section 29C.  Therefore, the indemnity clause controls.

NTCS focuses on the discrete provision requiring NTCS "to assume the cost of attorneys' fees for defense of [Lynch] and/or Owner by their own counsel for any claim, proceeding, lawsuit, and/or litigation arising out of any accident, incident or occurrence caused by, or in any way related to the performance of [NTCS'] work or materials furnished."  [Id.]  While this provision is broader than the indemnity provision, read as a whole, the provision regarding defense of J.H. Lynch limits NTCS' obligation to accidents and the like "caused by or in any way related to the performance of [NTCS'] work or materials."  [Id.]  Hence, it is not clear that this latter provision creates an obligation "regardless of whether [NTCS'] conduct caused the underlying accident."  [Dkt. No. 128 at 6].  However, even if this latter provision is interpreted expansively, it pertains to the duty to defend, an entirely separate obligation.  The duty to defend is separate from the duty to indemnify, and it is not covered by Section 29C.  Herson v. New Bos. Garden Corp., 40 Mass. App. Ct. 779, 787 (1996); Mullin, 2008 WL 11509800, at *11 ("The contract establishes separate duties to defend and to indemnify. These contractual duties stand (or fall) independently of each

other . . . [c]ontractual obligations requiring subcontractors to defend contractors or owners against suits are not covered by the requirements of Mass. Gen. Laws 149 § 29C." (internal citations omitted)).  Because this provision does not pertain to the duty to indemnify, it does not void the entire indemnity clause.

NTCS also argues that that J.H. Lynch has failed to plead that a negligent act or omission attributable to NTCS caused the harm alleged in the plaintiff's complaint.  NTCS asserts that J.H. Lynch needed to plead negligence to satisfy the standard for contractual indemnification.  While perhaps lacking in development, I find that the proposed third-party complaint is sufficient.

"A subcontractor's indemnity obligation is now determined by deciding whether the subcontractor's action or inaction brought about or provoked the mishap." Johnson v. Modern Continental Constr. Co., 49 Mass. App. Ct. 545, 547 (2000).  "The language of G.L. c. 149, § 29C, no longer requires a finding of the subcontractor's negligence in order to trigger a subcontractor's liability under an indemnity provision in a construction subcontract." Id.; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").  Here, J.H. Lynch asserts that the barriers NTCS provided were "defective."  At this stage, I find such an allegation to be a sufficient, even if bare-bones, claim of NTCS' liability.  Therefore, I recommend allowing the motion to file a third-party complaint based on this claim also.

C.  Breach of Contract

In the proposed third-party complaint J.H. Lynch alleges breach of contract founded on three failures: to acquire the insurance required by the Purchase Order; to be defended and indemnified by NTCS' insurer; and to provide materials of good quality, free from defects.  [Third

Party Compl. ¶ 23].  This contract claim fails, and I recommend that the motion to bring it be denied.[3]

J.H. Lynch asserts that NTCS failed to provide the required insurance.  This argument is a non-starter.  The Purchase Order provides in part:

> [NTCS] agrees to maintain insurance coverages with limits equal to or in excess of the Owner's requirement but not less than the following . . .  Prior to signing of the Purchase Order, [NTCS] shall submit Insurance Certificate(s) to [Lynch] evidencing the fact that insurance coverages with limits as stated above are in effect at the time the work is commenced or materials supplied.  It is the intention of both [Lynch] and [NTCS] that these coverages and limits shall remain in effect throughout the period of time that [NTCS] is working on the project . . .  The Insurance Certificate(s) shall name the Owner and [Lynch] as additional insured.

[Purchase Order ¶ 7].  J.H. Lynch in its own proposed third-party complaint concedes that NTCS provided the insurance certificates as required in the contract.  [Third Party Compl. ¶ 12 ("[NTCS] did, in fact, provide to Lynch a Certificate of Liability Insurance.")].  The proposed complaint recites the amounts and dates of insurance and that, as required, the certificate named J.H. Lynch as an additional insured.  [Id.]  If the allegation of failing to obtain insurance required by the Purchase Order means something else, it fails as insufficient.[4]

J.H. Lynch also alleges that NTCS' insurer has failed to defend and indemnify it.  This theory of breach is equally unavailing.  As NTCS argues in its opposition, J.H. Lynch may pursue

---

[3] It is not clear that the breach of contract claim arises from Hopkins' claim against J.H. Lynch. See United States v. One 1977 Mercedes Benz, 708 F.2d 444, 452 ("[A] third-party claim may be asserted only when the third party's liability is in some way dependant [sic] on the outcome of the main claim and the third party's liability is secondary or derivative."). However, Fed. R. Civ. P. 18 allows a party bringing a third-party claim to "join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18.

[4] If, for instance, in the absence of simply alleging the amount or scope of the insurance was insufficient, J.H. Lynch is asking the court to intuit such an insufficiency, I would decline to endorse such a claim. J.H. Lynch has some duty of vigilance as an additional insured; "the 'insured cannot abandon all responsibility for ascertaining the terms of the coverage [its] broker obtained.'" Ferguson v. Medstar Ambulance, Inc., No. 071040B, 2010 WL 4072632, at *2 (Mass. Super. Sept. 1, 2010) (quoting Campione v. Wilson, 422 Mass. 185, 196 (1997)).

such a claim against the insurer, but it has not sufficiently pled that NTCS would be responsible for the insurer's alleged failure to defend and indemnify J.H. Lynch.

Lastly, as to J.H. Lynch's claim for breach of contract based on defective goods, this claim also fails. As an initial matter, I agree with NTCS, and note there is no disagreement from J.H. Lynch, that the contract between the parties was for a sale of goods and is therefore covered by the Uniform Commercial Code. See Mass Cash Register, Inc. v. Comtrex Sys. Corp., 901 F. Supp. 404, 419 (D. Mass. 1995). Pursuant to Mass. Gen. Laws. ch. 106, § 2-606, "a buyer is deemed to have accepted goods when, after a reasonable opportunity to inspect them, he signifies to the seller that he will retain them in spite of their non-conformity, or fails to effectively reject the them; or when he performs any act inconsistent with the seller's ownership of the goods." Novacore Techs. v. GST Communs. Corp., 20 F. Supp. 2d 169, 183 (D. Mass. 1998). When a buyer accepts goods, "the buyer forfeits the right to reject the tender." Id. at 184 (quoting Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 72 F.3d 190, 200 (1st Cir.1995); see also Mass. Gen. Laws Ann. ch. 106, § 2-602 ("Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller."). Here, the proposed third-party complaint alleges that the parties executed the Purchase Order on October 2, 2015. [Third Party Compl. ¶ 8]. NTCS correctly notes that J.H. Lynch did not reject the goods, despite the date of performance having occurred some five years ago and the accident having occurred two years ago. [Dkt. No. 128 at 9–10]. Thus, the breach of contract claim fails.[5]

---

[5] The Undersigned notes, but deems waived, that a buyer may "revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it . . . without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." Mass. Gen. Laws ch. 106, § 2–608; C.A.I., Inc. v. Vitex Packaging Grp., Inc., 115 F. Supp. 3d 168, 175 (D. Mass. 2015). J.H. Lynch does not raise this theory of excusing non-conformity. Perkins, 969 F. Supp. 2d at 177.

D.  Undue Delay and Prejudice

Lastly, J.H. Lynch asserts that, should this court grant leave to file the third-party complaint, no party will suffer prejudice.  While I disagree, I believe that adjustments to deadlines can address any resulting prejudice.  Therefore, I recommend allowing leave to file the third-party complaint.

As applicable here, Fed. R. Civ. P. 14(a) authorizes a party to seek the court's leave to file a third-party complaint.  "[T]he determination [to grant leave] is left to the informed discretion of the district court, which should allow impleader on any colorable claim of derivative liability that will not unduly delay or otherwise prejudice the ongoing proceedings."  Lehman, 166 F. 3d at 393. This discretion should ordinarily be applied in favor of impleader:

> Several other factors have been considered by federal courts in exercising their discretion under Rule 14.  The mere enlargement of the time required for the trial of the case is not itself adequate to cause dismissal of the third-party action, since it probably is offset by the savings achieved by avoiding a second action.  However, an unreasonable delay by defendant in seeking impleader, which causes substantial prejudice to plaintiff's ability to maintain the action, may constitute an appropriate ground for denial of impleader.

Wright & Miller, Federal Practice and Procedure, § 1443 (3d ed. 2020).

In support of leave to file, J.H. Lynch asserts that it provided timely notice to NTCS and that trial was over a year from the filing of the motion for leave.  Actually, neither assertion is fair or accurate.  As the general contractor on the road repairs, J.H. Lynch has known about the accident since its occurrence in September 2018.  Plaintiff brought suit in federal court less than two months later.  J.H. Lynch could have anticipated being sued and had at its disposal the Purchase Order and its indemnification clause against NTCS.  In any case, Hopkins filed an amended complaint expressly naming J.H. Lynch in February 2020.  [Dkt. No. 68].  Despite being named a defendant and being served on March 20, 2020, J.H. Lynch did not send a tender letter to NTCS until nearly

11

six months later.  [Dkt. No. 126-3].  Under the circumstances, particularly J.H. Lynch's awareness

of the proceedings and its own potential liability, characterizing J.H. Lynch's notice to NTCS as

"timely" ignores the record.  This is equally true of J.H. Lynch's assertion that trial was more than

one year from its motion for leave.  In fact—and I only address it because J.H. Lynch relies on the

assertion—the motion was filed on November 5, 2020, less than a year from the November 1, 2021

trial date.  [Dkt. No. 126].

Even apart from the accuracy of J.H. Lynch's representations to the court in seeking leave,

as NTCS points out, discovery has been proceeding for a substantial time and has generated several

thousands of pages.  The current discovery deadline is March 23, 2021, less than two months away,

and trial remains calendared for November 1, 2021.  Given this procedural background, NTCS is

justifiably concerned about prejudice if the motion for leave is granted.  This is particularly true

given J.H. Lynch's characterization of NTCS as "not a mere broker or incidental third party," but

having exposure to liability in the tragic accident that rendered plaintiff paraplegic.  [See Dkt. No.

130 at 2].

Lastly, there is no small level of tension between J.H. Lynch's assertion that no party will

be prejudiced by granting leave to file the proposed third-party complaint and J.H. Lynch's January

20, 2021 letter to the court.  [Dkt. No. 139].  In that letter, Attorney Shaughnessy asks Judge

Hillman to order the return of the instant referred motion because the undersigned had yet to decide

it.  [Id. at 1].  Putting aside the basis for this request—J.H. Lynch filed the motion on November

5 and its reply brief on December 2—Attorney Shaughnessy asserted the following in support of

his appeal:

> [T]he addition of [NTCS] as a new party would necessitate additional discovery
> and depositions, and would require prompt action by counsel for all parties to
> ensure completion within the Court's scheduling order.

[Dkt. No. 139 at 1].  A fair reading of this reasoning is, at least in my view, a concession that prejudice is very likely to result from granting leave to file the third-party complaint.

Ordinarily, on the basis of the foregoing, I would recommend denying leave.  However, recognizing "the savings achieved by avoiding a second action," and the fact that no party other than NTCS has registered an objection to the motion, I recommend granting leave.  I believe that resulting prejudice to NTCS can be addressed by adjusting the discovery schedule and, if necessary, the trial date.  I note also that we remain in the midst of a pandemic and that even for reasons unrelated to the merits of J.H. Lynch's motion for leave to file the third-party complaint, circumstances may necessarily require at least a brief continuance in the trial date.

V.      CONCLUSION

For all the foregoing reasons, I recommend that leave to file the proposed third-party complaint be GRANTED in part and DENIED in part.  I recommend that leave be DENIED as to Count III alleging breach of contract.[6]

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[6] The parties are notified that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of service of this Report and Recommendation.  The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72(b)(2).  The United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See, e.g., United States v. Diaz-Rosado, 857 F.3d 89, 94 (1st Cir. 2017); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).