UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAMERON HOPKINS, | ) |
| Plaintiff, | ) |
| v. | ) |
| SEAN E. YI, JACKYMOON CORP., GREENMAN-PEDERSEN, INC., AND HILL & SMITH INC., | ) |
| Defendants, | ) |
| and | ) |
| J.H. LYNCH & SONS, INC., | ) |
| Defendant/Third-Party Plaintiff, | ) |
| v. | ) |
| NORTHEAST TRAFFIC CONTROL SERVICES, INC., | ) |
| Third-Party Defendant. | ) |
| RAMON FELIPE FERREIRA, | ) |
| Plaintiff, | ) |
| v. | ) |
| SEAN E. YI AND JACKYMOON CORP., ET AL, | ) |
| Defendants. | ) |

**CONSOLIDATED CASES**
**4:18-CV-40197-TSH**
**1:19-CV-40045-TSH**

### CONSOLIDATED MEMORADUM AND ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
August 31, 2022

Hillman, S.J.

Plaintiff Cameron Hopkins ("Plaintiff Hopkins") brings a negligence claim against Sean E. Yi, Jackymoon Corp, Greenman-Pederson, Inc., ("GPI"), Hill and Smith, Inc., J.H. Lynch & Sons, Inc. ("Lynch") (collectively, "Defendants") arising from injuries he sustained in a motor vehicle accident on Route 146 in Millbury, Massachusetts. Plaintiff Ramon Felipe Ferreira ("Plaintiff Ferreira") also brings a claim of negligence against Defendants arising from injuries he sustained in the same accident and the cases were consolidated. Lynch filed a Third-Party Complaint against Northeast Traffic Control Services, Inc. ("Northeast"). GPI and Hill and Smith now move for summary judgment on all claims against them. For the following reasons, the motions are **denied**.

### Background[1]

On September 12, 2018, defendant Sean Yi, a truck driver employed by defendant Jackymoon Corp., was driving a tractor-trailer owned by Jackymoon on Route 146 North in Millbury. Mr. Yi lost control of the tractor-trailer and struck the median barrier separating the northbound and southbound lanes. Upon impact with the tractor-trailer, several hundred feet of the barrier tipped over. The tractor-trailer crossed over into the southbound lane, where it struck multiple vehicles, including the car driven by plaintiff, Cameron Hopkins. At the time of the accident, Yi was operating the tractor trailer at a speed in excess of the posted limit in the construction zone[2], and unsuitably for the weather and wet road conditions.

---

[1] The Court views "the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (citation and internal quotation marks omitted).
[2] Witness testimony and the testimony of Yi varies as to the exact rate of speed at the time of the accident.

As a result of the collision between the tractor and his vehicle, 23-year-old Hopkins, of Suttton, Massachusetts, experienced serious injuries, including paraplegia, an above-the knee amputation of his left leg, and a permanent colostomy. The collision involved multiple vehicles, including the car driven by plaintiff, Ramon Ferreira of Bellingham, Massachusetts. As a result of the collision between the tractor and his vehicle, Ferreira experienced serious injuries which required multiple days in a hospital.

At the time, Route 146 was undergoing a road project involving multiyear, multiphase bridge and construction repairs ("the Project"). GPI prepared the contract documents for the Massachusetts Department of Transportation ("MassDOT") to solicit bids for the Project. MassDOT awarded the contract to Lynch in 2015 oversee construction of the Project and serve as the general contractor with GPI serving as the design engineer. Hill & Smith, Inc. was the manufacturer of the temporary restraint barrier system used on the Project, known as Zoneguard. Northeast was the vendor that sold the Zoneguard barrier system to Lynch.

GPI prepared and provided temporary traffic control plans ("TTCPs") for each stage of the Project. GPI also drafted the Project's Special Provisions, which are project-specific amendments to standard specifications that set forth the criteria that nearly all aspects of the Project, and all materials used, were required to meet.

The Special Provisions for the Project called for the installation of a Temporary Restrained Barrier on the roadways in the work zone. The barrier system was required to "be designed and installed to meet or exceed Test Level 3 (TL-3) in accordance with the National Cooperative Highway Research Program,' Report 350 (NCHRP 350) or the AASHTO Manual for Assessing Safety Hardware (MASH) and be approved by the Federal Highway Administration (FHWA)." Additionally, the barrier system was required to be "designed to not deflect more than three inches (3") when struck by an errant vehicle in accordance with the

criteria set forth for Test Level 3 of NCHRP 350 or MASH. The Special Provisions further required Lynch to supply the FHWA approval letter, anchorage details, and manufacturer-approved shop drawings specifying the maximum deflection distance of the barrier system for approval by MassDOT and GPI. The Special Provisions referenced the "California K-Rail" and "TXDOT New Jersey Shape barrier" as concrete barrier products that complied with the contractual requirements.

When Lynch first requested permission from GPI to use Zoneguard on the Route 146 Project, GPI forwarded the request to MassDOT. James Danila of MassDOT acknowledged that Zoneguard had been approved on a project-by-project basis, for use on MassDOT projects, but advised that MassDOT wanted a formal application from Hill and Smith to place the Zoneguard on the approved barrier list for MassDOT projects statewide. Hill & Smith marketed Zoneguard, a temporary steel barrier, as a "lightweight" and "cost-effective" alternative to traditional concrete barrier, with an 85% lighter weight at 62 pounds per linear foot versus approximately 400 pounds per linear foot for concrete barriers. Hill & Smith and NTCS represented to Lynch that the Zoneguard barrier would meet the Project's specifications regarding the deflection requirement.

On August 12, 2015, Lynch's project manager, Greg Oswitt, attended a meeting with Glenn Roy of Northeast and Tony Cappella of Hill & Smith to discuss the suitability of the Zoneguard barrier system for use on the Route 146 project. At that meeting, Northeast and Hill & Smith provided Lynch with documents containing technical information regarding the installation and use of the Zoneguard product, and advised that the Zoneguard system would perform in accordance with the Special Provisions for the Route 146 project. On August 14, 2015, Oswitt requested additional technical information regarding the Zoneguard system, which Roy provided on August 17, 2015.

On September 30, 2015, Lynch purchased 8,000 linear feet of Zoneguard for the Project for just under $1 million. At the time Lynch bought Zoneguard from Hill & Smith, Zoneguard was not approved by MassDOT for use on its projects. On the same date, Northeast issued a Certificate of Compliance to Lynch, which provided, in relevant part, that the Zoneguard barrier system "meet[s] the requirements of the pertinent project plans, special provisions and specifications of the Massachusetts Highway Department, in all respects." GPI had never seen it used on a project, and Lynch had never used or installed it before. Northeast and Lynch executed a Purchase Order for the Zoneguard barrier system and other items for the Route 146 project on October 2, 2015. On October 5, 2015, Cappella of Hill & Smith sent an email to Oswitt of Lynch and Roy of Northeast, advising Lynch that Hill & Smith would "have someone available to assist during the initial installation to make sure everything goes as smooth as possible." Cappella further advised that Gary Lallo of Hill & Smith "will be available for any engineering support for this installation."

On October 15, 2015, Hill & Smith submitted its Zoneguard shop drawings to MassDOT and GPI to obtain approval for use on the project. This submittal was comprised of barrier applications completed by Hill & Smith, FHWA eligibility letters from concrete testing, product specifications, and installation details. In its application for MassDOT approval, Hill & Smith included a copy of the crash test results for Zoneguard when installed in concrete but not in asphalt. The application stated that the Zoneguard barrier system deflected between 2" and 5" under TL-3 test conditions. The crash test data provided by Hill & Smith showed, however: (1) that the testing had been performed in concrete, not asphalt; and (2) that the dynamic deflection of the Zoneguard barrier system was 0.41 meters, or approximately 16".

Once MassDOT approved Zoneguard to be used on its projects, GPI reviewed the shop drawings to ensure that the approved product, here Zoneguard, met the specifications for the

5

particular project. In this case, GPI determined that the Zoneguard did not meet the Project specification for deflection. GPI's senior traffic engineer and corporate designee, Mark Elder, reviewed the submittal to see that it met the requirements of the contract and then approved the shop drawings for the use of Zoneguard barrier on this project. It was approved on the Project with the stipulation that: "Due to the fact that the proposed system deflects more than the Special Provisions for this item allow for, the location of the yellow edge lines shall be adjusted such that no part of the barrier will encroach the travel way in the event that maximum deflection occurs.". GPI did not disclose an actual number to on its approval as to how far to adjust the yellow edge lines or what "maximum deflection" was and did not change the TTCPs, which continued to show a 3" distance between the yellow lines and the barrier separating opposing highway traffic.

On November 18, 2015, representatives of Lynch, Northeast, and Hill & Smith participated in the initial installation of the Zoneguard barrier system on the Route 146 project. As the Project progressed, the barriers were installed, removed, and reinstalled for each stage of construction in accordance with GPI's TTCPs. The incident that is the subject of this litigation occurred during Stage 2A of the construction and related traffic control plan. During this stage, the Zoneguard was used to separate the northbound travel lanes from the southbound travel lanes. The Zoneguard barriers in this area of the Project were installed by Lynch. Lynch contends it had no idea what the maximum deflection of the Zoneguard barriers was or how to calculate it. Lynch's foreman, who oversaw the installation of Zoneguard, "never saw the approval and stipulations from GPI about how it expected this product to be placed." See Deposition of Peter Boin,1/28/2021, pp. 13-14 (Exhibit 36). 59. Lynch "just went by GPI's drawings which all indicated that 3 inches was sufficient."

Plaintiff's engineering experts, Daniel Dulaski, Ph.D. and Edward Chase, P.E., both opine that the Zoneguard barrier system should not have been submitted or approved for use on

the Route 146 project, where its maximum deflection values exceeded the contractual requirements, where it had not been tested or approved by the Federal Highway Administration in an asphalt roadway application, and where it was substantially lighter than the other barrier systems recommended in the contract. Dulaski and Chase further opine that given the deflection data and space restrictions of the roadway, no placement of the Zoneguard barrier in relation to the yellow edge lines could have complied with the project specifications without revisions to the temporary traffic control plans. Dulaski and Chase also opine that the Certificate of Compliance issued by Northeast was inaccurate, where the testing and data available at the time showed that the Zoneguard product did not meet the contract specifications for the Route 146 project.

**Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment if the moving party shows, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute precludes summary judgment if it is both "genuine" and "material." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986). An issue is "genuine" when the evidence is such that a reasonable factfinder could resolve the point in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it might affect the outcome of the suit under the applicable law. *Id*.

The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). It can meet its burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the nonmoving party's case.'" *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D.Mass.

2005), *aff'd*, 442 F.3d 7 (1st Cir. 2006) (*quoting Celotex*, 477 U.S. at 325). Once the moving party shows the absence of any disputed material fact, the burden shifts to the non-moving party to place at least one material fact into dispute. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (*citing Celotex*, 477 U.S. at 325). When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (citation omitted).

## Discussion

A. <u>Hill and Smith's Motion for Summary Judgment (Docket No. 191)</u>

Hill and Smith moves for summary judgment as to all claims asserted against it by Plaintiff Hopkins arguing that there is no any causal connection between any alleged conduct by Hill & Smith, the manufacturer of Zoneguard and Plaintiff's injuries. Plaintiff Hopkins opposes the motion, asserting that there is evidence on the record by which a reasonable jury could find that Hill and Smith's negligence is a "but for" cause of the accident under the standard put forth in *Doull v. Foster*, 487 Mass. 1 (2021).

To prevail on a negligence claim, a plaintiff must prove that there was a causal relation between the breach of the duty of reasonable care and the damage. *Jupin v. Kask*, 447 Mass. 141, 146 (2006). "It is a bedrock principle of negligence law that a defendant cannot and should not be held liable for a harm unless the defendant caused the harm." *Doull*, 487 Mass. at 6-7 (2021), *citing Wainwright v. Jackson*, 291 Mass. 100, 102 (1935) ("The general rule is that one cannot be held liable for negligent conduct unless it is causally related to the injury of the plaintiff.") "Generally, a defendant is a factual cause of a harm if the harm would not have occurred 'but for' the defendant's negligent conduct." *Id.*, at 7. *See W.L. Prosser & W.P. Keeton*, Torts § 41, at 265 (5th ed. 1984) ("An act or an omission is not regarded as a cause of an

event if the particular event would not have occurred without it.") The purpose of the but-for test is to separate the conduct that had no impact on the harm from the conduct that caused the harm. *Id.*, at 11. The but-for standard is the proper standard in most negligence cases, as the but-for causes can be identified and conduct that had no causal effect can be excluded. Id. at 10. Causation is to be decided by a jury when factual issues exist. *See Mullins v. Pine Manor College*, 389 Mass. 47, 58 (1983).

    Hill and Smith argues there is no causal connection between the failure of Zoneguard to meet the contract specifications and the tractor-trailer colliding with the barrier and its subsequent encroachment into the southbound lane of traffic. Further, Hill and Smith contend that no issue of material fact exists showing that Zoneguard's failure to meet the deflection standards called for in the specifications caused the collision and that Zoneguard would, in fact, have prevented the accident if it had been properly installed.

    There is ampe record evidence that Hill & Smith sold the Zoneguard knowing that it could not meet the Project's engineering specifications. Taken in the light most favorable to the Plaintiff, a jury could reasonably find that but for that fact, the accident may have been prevented.

  B.  <u>GPI's Motion for Summary Judgment (Docket No. 204)</u>

    GPI moves for summary judgment as to all claims asserted against it by Plaintiff Hopkins arguing that there is no causal connection between any alleged conduct by GPI and Plaintiff's injuries. Plaintiff Hopkins opposes the motion, asserting that there is evidence on the record by which a reasonable jury could find that Hill and Smith's negligence is a "but for" cause of the accident under the standard put forth in *Doull v. Foster*, 487 Mass. 1 (2021).

    Under the *Doull* standard, there can be varying levels of causation that cause a harm. *See Doull*, 487 Mass. at 12. There is evidence on the record that GPI approved Zoneguard for use on

the Project knowing that it failed to comply with the specifications of the job and competing facts about who made recommendations and who relied on them. Taken in the light most favorable to the Plaintiff, because there are genuine issues of material fact as to causation, GPI's motion for summary judgment is denied.

    C. <u>Hill and Smith's Motion for Summary Judgment as to Plaintiff Ferriera (Docket No. 195)</u>
       <u>GPI's Motion for Summary Judgment as to Plaintiff Ferreira (Docket No. 207)</u>

Both Hill and Smith and GPI separately move for summary judgment as to Plaintiff Ferreira but as their arguments are similar, they will be addressed together. Both motions are premised on their contention that Plaintiff Ferreira has not identified any expert witnesses to support his claim that the tractor trailer's collision with his vehicle was causally related to any action of either Hill and Smith or GPI and refer to their arguments to support their motions above.

Plaintiff responds that this Court entered an Order for consolidation of the cases 18-40197-TSH and 19-400455-TSH. At all relevant times to this action, all entries have been docketed in 4:18-cv-40197-TSH, and all scheduling orders, including trial dates, have been identical for both Plaintiffs and all Defendants.[3] Plaintiff's Hopkins and Ferreira have substantially different injuries, and as such have different experts pertaining to their damages. As their injuries occurred from the same accident and from an identical set of facts, the Court agrees that principles of judicial economy and common sense dictate that Plaintiff Ferreira's should remain as part of the consolidated case.

---

[3] Plaintiff Ferreira admits that he failed to separately (from Plaintiff Hopkins) to disclose his experts, even if he is duplicating the causation witnesses of Plaintiff Hopkins. This would normally be grounds for granting summary judgment, however, there is no prejudice to the Defendants going forward and there has been no opposition from Plaintiff Hopkins.

D. <u>Northeast's Motion for Summary Judgment as to Lynch (Docket No. 198)</u>

Northeast moves for summary judgment as to Lynch for its third-party claims for contribution and contractual indemnity. Northeast argues that even if there were sufficient evidence for a jury to find that it was negligent in supplying the Zoneguard barriers, there is no evidence that Northeast's negligence caused the subject accident. Northeast contends that Lynch has no reasonable expectation of proving its claim for contractual indemnity, where there is no evidence that the accident was caused by any act or omission of Northeast.

Most of the operative facts are included infra. Additional facts relating to the contractual agreement between Northeast and Lynch are as follows. The relevant contract between Lynch and Northeast is the sale of the Zoneguard barriers which is controlled by a written Purchase Order executed by both parties on October 2, 2015, two days after the Certificate of Compliance was issued by Northeast. Lynch does not dispute "that the contract between the parties was for a sale of goods." Lynch drafted the Purchase Order, which contains the following relevant clauses:

> Paragraph 1:
>
> This Purchase Order is subject to all project documents in effect between the Contractor and Owner. Supplier hereby acknowledges it has reviewed and is familiar with all the relevant portions of project documents, plans, specifications, the primary contract between the owner and the contractor and general conditions of special provisions thereof.
>
> Paragraph 9 of the Purchase Order states:
>
> Material Certificates of Compliance. Material Certificates of Compliance to be issued by manufacture[r] (not supplier).
>
> Paragraph 10 of the Purchase Order provides for indemnification, in part, as follows:
>
> Indemnification To the fullest extent permitted by law, Supplier [NETC] shall indemnify, hold harmless and defend Contractor [Lynch] . . . from any and all injuries,

claims, damages …, directly or indirectly, arising out of or in connection with the performance of the Supplier's work or materials furnished under this Purchase Order, provided that such claim, damage, loss or expenses results from bodily injury… to any person(s)… but only if the claim, damage, loss, or expense is caused by or resulting from the act or omission of the Supplier, the supplier's subcontractors, or anyone directly or indirectly employed by any of them for whose acts they may be liable. Supplier shall not be required by this Purchase Order to indemnify the Contractor . . . for that portion of any loss that is directly attributable to the negligence of the Contractor or Owner . . . except to the extent that such indemnification is permitted by law.

Paragraph 13 of the Purchase Order contains the following integration clause:

Entire Agreement. The Supplier agrees that this Purchase Order together with the Project Documents represents the entire agreement between the Contractor and Supplier and that any negotiations or dealings of any nature whatsoever prior to the date of execution hereof are represented in this Purchase Order and the Project Documents, and that there are no other agreements or understandings between Contractor and Supplier other that as expressed herein. This Purchase Order may not be changed in any way except as herein provided for in writing signed by a duly authorized officer of agent of each party. No requirement of this Purchase Order may be waived except in writing signed by duly authorized representatives of the waiving party.

Lynch contends there are numerous questions of material fact regarding Northeast's conduct in connection with the sale and installation of the Zoneguard barrier system that must be resolved by the jury in this matter, including whether Northeast improperly recommended and sold the Zoneguard barrier for use on the Project. Lynch points to the Certificate of Compliance, where Northeast certified that it "[met] the requirements of the pertinent project plans, special provisions and specifications of the Massachusetts Highway Department, in all respects." The Court agrees that issues of fact exist as to the accuracy and effect of Northeast's representations in the Certificate of Compliance and its involvement in the preparation and installation of the Zoneguard barrier system which preclude the entry of summary judgment in this matter.

**Conclusion**

For the reasons set forth above:

Hill and Smith's Motion for Summary Judgment is **denied** (Docket No. 191);

GPI's Motion for Summary Judgment is **denied** (Docket No. 204);

Hill and Smith's Motion for Summary Judgment as to Plaintiff Ferreira is **denied** (Docket No. 195);

GPI's Motion for Summary Judgment as to Plaintiff Ferreira is **denied** (Docket No. 207;

and Northeast's Motion for Summary Judgment as to Third Party Plaintiff Lynch is **denied** (Docket No. 198).

**SO ORDERED**.

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
UNITED STATES SENIOR DISTRICT JUDGE