# EXHIBIT B

```
                                                          1

                                         Volume:  I

                                         Pages:  256

                                         Exhibits:  9

               UNITED STATES DISTRICT COURT

                              DISTRICT OF MASSACHUSETTS

                              C.A. NO. 4:18-CV-40197-TSH

    *******************************

    CAMERON HOPKINS,

          Plaintiff,

    v.

    SEAN E. YI, JACKYMOON CORP.,

    GREENMAN-PEDERSEN, INC., AND

    HILL & SMITH INC.

          Defendants,

    AND

    J.H. LYNCH & SONS, INC.,

          Defendant/Third-Party

          Plaintiff,

    v.

    NORTHEAST TRAFFIC CONTROL

    SERVICES, INC.,

          Third-Party Defendant.

    *******************************
```

**BRIAN CHASE**

---

**2**

1    DEPOSITION of BRIAN CHASE, a witness

2  called on behalf of the Defendants, taken

3  pursuant to the applicable provisions of the

4  Massachusetts Rules of Civil Procedure 30,

5  before Natalie C. Webb, a Court Reporter via

6  Zoom, Commencing on Tuesday, December 28, 2021,

7  at 12:01 p.m.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

---

**4**

1  APPEARANCES CONTINUED:

2

3  MATTHEW H. GREENE, ESQUIRE

4  Boyle | Shaughnessy Law, P.C.

5  695 Atlantic Avenue, 11th Floor

6  Boston, Massachusetts 02111

7  mgreene@boyleshaughnessy.com

8  (617) 451-2000

9  Appearing on behalf of the Defendant J.H. Lynch

10  (via Zoom)

11

12  AMY MAGHER, ESQUIRE

13  Kiernan Trebach, LLP

14  40 Court Street, 3rd Floor

15  Boston, Massachusetts 02108

16  amagher@kiernantrebach.com

17  (617) 426-3900

18  Appearing on behalf of the Defendant Hill &

19  Smith, Inc. (via Zoom)

20

21

22

23

24

---

**3**

1  APPEARANCES:

2

3  DAVID P. MCCORMACK, ESQUIRE

4  Sugarman and Sugarman, P.C.

5  The Prudential Tower

6  800 Boylston Street, 30th Floor

7  Boston, Massachusetts 02199

8  dmccormack@sugarman.com

9  (617) 542-1000

10  Appearing on behalf of the Plaintiff, Cameron

11  Hopkins (via Zoom)

12

13  CARLI BUONO, ESQUIRE

14  Georges Cote Law

15  235 Marginal Street

16  Chelsea, Massachusetts 02150

17  cbuono@georgescotelaw.com

18  (617) 884-1000

19  Appearing on behalf of the Plaintiff, Ramon

20  Felipe Ferreira (via Zoom)

21

22

23

24

---

**5**

1  APPEARANCES CONTINUED:

2

3  THOMAS V. DIGANGI, ESQUIRE

4  Coughlin Betke, LLP

5  175 Federal Street

6  Boston, Massachusetts 02110

7  tdigangi@coughlinbetke.com

8  (617) 988-8050

9  Appearing on behalf of the Third Party Defendant

10  Northeast Traffic Control Services, Inc. (via

11  Zoom)

12

13  CHRISTOPHER R. HOWE, ESQUIRE

14  Campbell, Conroy & O'Neil, P.C.

15  One Constitution Wharf, Suite 310

16  Charlestown, Massachusetts 02108 02129

17  chow@campbell-trial-lawyers.com

18  (617) 241-3000

19  Appearing on behalf of the Defendants Sean E. Yi

20  and Jackymoon Corp. (via Zoom)

21

22

23

24

---

**2 (Pages 2 to 5)**

**BRIAN CHASE**

**6**

1      APPEARANCES CONTINUED:
2
3      PATRICK VOKE, ESQUIRE
4      McGlinchey Stafford
5      One Boston Place, 29th Floor
6      Boston, Massachusetts 02108
7      pvoke@mcglinchey.com
8      (857) 453-7150
9      Appearing on behalf of the Defendant
10     Greenman-Pedersen, Inc. (via Zoom)
11
12     ALSO PRESENT (via Zoom):
13     Sarah Yun
14     Ben Zimmermann
15
16
17
18
19
20
21
22
23
24

**7**

1                INDEX
2   WITNESS:    DIRECT  CROSS  REDIRECT  RECROSS
3   BRIAN CHASE
4   By Mr. Greene     9        243
5   By Ms. Magher      219       231
6   By Mr. McCormack    229
7   EXHIBITS:                MARKED
8   1 - Police report of accident Milbury, MA    47
9   2 - Invoice/Report from private investigator   51
10   3 - Armando Bousquet handwritten statement    53
11   4 - Citation for Sean Yi marked lane violation   77
12   5 - Mr. Yi's handwritten statement      79
13   6 - Mr. Yi's deposition transcript      102
14   7 - Full Yi transcript          113
15   8 - Addendum A through C       129
16   9 - GPS map of scene of accident     204
17
18
19
20
21
22
23
24

**8**

1           P R O C E E D I N G S
2      THE REPORTER:  We are on the record at
3   12:01.  Today's date is December 28th, 2021.  My
4   name is Natalie Webb, and I am the court
5   reporter assigned to your proceeding today.
6      Beginning with the noticing party, will
7   counsel please introduce themselves and state
8   whom they represent?
9      MR. GREENE:  Matthew Greene.  I
10   represent J.H. Lynch.
11     MR. MCCORMACK:  David McCormack for the
12   Plaintiff, Cameron Hopkins.
13     MS. MAGHER:  Amy Magher for the
14   Defendant Hill & Smith.
15     MR. DIGANGI:  Tom DiGangi for the third
16   party Defendant Northeast Traffic Control.
17     MR. HOWE:  Christopher Howe on behalf of
18   Defendant Sean E. Yi and Jackymoon Corporation.
19     MS. BUONO:  Carli Buono for Plaintiff
20   Ramon Ferreira.
21     MR. VOKE:  Patrick Voke for
22   Greenman-Pedersen, Inc.
23     THE REPORTER:  Okay.  Will the witness
24   please raise your right hand to be sworn?

**9**

1      (Oath administered.)
2      THE REPORTER:  Thank you.
3   Counsel, you may proceed.
4        BRIAN CHASE
5   called as a witness, after having been first remotely
6   duly sworn, was examined and testified as follows:
7       DIRECT EXAMINATION
8   BY MR. GREENE:
9   Q.   Good afternoon, Mr. Chase.  As I said before, my
10     name is Matthew Greene, and I represent J.H.
11     Lynch.  Can you first tell us where you are
12     currently?
13   A.   Elm Street in Manchester, New Hampshire.
14   Q.   Okay.  Is that your business address or your
15     home address?
16   A.   Neither.
17   Q.   Okay.  Why there?
18   A.   I'm sorry?
19   Q.   Why are you there?
20   A.   This was the location that we agreed upon for
21     this deposition.
22   Q.   Okay.  Is it just a resident location?  Does it
23     have any relation to your business or anything
24     else?

**3 (Pages 6 to 9)**

**BRIAN CHASE**

---

**182**

1    characteristic that is input into the program?

2  A.   You -- from the CAD program that's included with

3    the -- with the Virtual CRASH program, you can

4    incorporate -- if you were to -- if -- if we are

5    looking at the end of a barrier and the design

6    so it's so wide half -- at the halfway point,

7    it's so wide at the base, all of that can be

8    incorporated.

9  Q.   Okay.  But it doesn't incorporate physical

10    characteristics like rigidity or really anything

11    else, other than the height, weight, and width;

12    is that right?

13  A.   This is -- Virtual CRASH is not a program

14    designed for analyzing barriers.  That's why we

15    have crash testing with barriers.  What it is

16    designed for is the science of collision

17    reconstruction, so the barriers are certainly

18    realistic by size and -- and weight and

19    location.  But again, it's not a -- it's not a

20    barrier software program.

21  Q.   So the difference between the Zoneguard barriers

22    and the concrete barriers for the purposes of

23    this simulation, was the only different variable

24    the weight of the barriers?

---

**183**

1  A.   No.  The -- the -- I believe the height was

2    different and that's just speculation on my part

3    at this point, but it was representative of one

4    of the types of concrete barriers.

5  Q.   So it's higher and it weighed more?

6  A.   I'm not -- I'm not sure of the height of it but

7    whatever the manufacturer's specifications were

8    for the concrete barrier.

9  Q.   Now, you've said you ran multiple simulations

10    without rendering of different speed inputs.

11    What is the range of speed inputs that you ran

12    in order to help inform your report?

13  A.   I'm not prepared to answer that.

14  Q.   Well, is there any record of it?

15  A.   Probably not.

16  Q.   Okay.  So you just conducted some unknown number

17    of simulations at different speeds, but there's

18    really no way to determine what speeds you input

19    or what the results were; is that right?

20  A.   Well, the -- the purpose of the still images was

21    to merely depict that of the -- the impact angle

22    of the -- the tractor with the barrier, and then

23    the additional analyses was performed with

24    concert barriers just as a representation.

---

**184**

1    That's for the purpose of this report.

2  Q.   I understand for your report, but I'm asking

3    more about your methodology.  You testified that

4    for the purposes of creating your report, you

5    ran various simulations, although you didn't

6    complete that, you didn't finish rendering them,

7    and those simulations included multiple speed

8    inputs.  But your testimony is that you can't

9    recall what speed input you put in for these

10    various simulations; is that right?

11  A.   That's correct.  But certainly for the purpose

12    of final rendered simulations, my thoughts are

13    to repeat some of those speed inputs.

14  Q.   But how can you repeat them if you can't tell --

15    there's no record of what they were?

16  A.   Well, I provide a range of speed, and I can -- I

17    can introduce any speed into the program, and

18    the purpose of that is to show that higher

19    speeds on approach for the tractor trailer

20    result in a totally different final rest than

21    what we known occurred.

22  Q.   So what is the range of speeds that you input to

23    reach that conclusion?

24  A.   That will be determined in the future, and I

---

**185**

1    don't recall, as I sit here, what was used in

2    the past.

3  Q.   I'll ask the same question regarding when you

4    ran simulations with the truck starting in the

5    right lane as opposed to the left lane, is there

6    any record of that?

7  A.   Nothing -- nothing that's recorded because I do

8    not have Klein's inputs to create a -- a final

9    rendered version.

10  Q.   But this isn't about Klein's inputs.  I'm asking

11    you about simulations that you did before you

12    prepared your report, things that you relied

13    upon.

14  A.   Well, no, your question was --

15    MR. MCCORMACK:  Well, hold on.  Was

16    there a question there, Matt?

17    MR. GREENE:  Yes.  Please complete your

18    answer.

19  A.   The question, the way I understand it, was there

20    any record of the -- of the projects running the

21    tractor trailer in the right-hand lane.  And my

22    response is, no, there's no record of it, but

23    there will be in the future.  And the reason

24    that these haven't been completed is because of

---

**BRIAN CHASE**

254

1  DEPOSITION OF:  BRIAN CHASE

2  DATE TAKEN:  December 28, 2021

3  BY: Natalie C. Webb

4

5       This is to certify that I have read the

6  transcript of my deposition taken in the above-entitled

7  cause and that the foregoing transcript accurately states

8  the questions asked and the answers given by me as they now

9  appear.

10

11       _____

12            BRIAN CHASE

13

14  SUBSCRIBED AND SWORN TO

15  Before me this _____ day

16  of _____ 2021.

17

18  _____

19  Notary Public

20

21

22

23

24

255

1            CORRECTION PAGE

2  DEPOSITION OF:  BRIAN CHASE

3  DATE TAKEN:  December 28, 2021

4  BY:  Natalie C. Webb

5    PAGE      LINE      CHANGE

6    _____   _____   _____

7    _____   _____   _____

8    _____   _____   _____

9    _____   _____   _____

10   _____   _____   _____

11   _____   _____   _____

12   _____   _____   _____

13   _____   _____   _____

14   _____   _____   _____

15   _____   _____   _____

16   _____   _____   _____

17   _____   _____   _____

18   _____   _____   _____

19   _____   _____   _____

20   _____   _____   _____

21

22  DATE: _____

23  SIGNATURE OF DEPONENT: _____

24

256

1            C E R T I F I C A T E

2       I, Natalie C. Webb, a Court Reporter and Notary

3  Public in and for the state of Florida, do hereby

4  certify that the foregoing audio-visual deposition of

5  Brian Chase, was taken remotely before me on December

6  28, 2021.  The said witness was satisfactorily

7  identified and duly sworn before the commencement of

8  his testimony; that the said testimony was taken

9  audiographically by myself and then transcribed under

10  my direction.  To the best of my knowledge, the within

11  transcript is a complete, true and accurate record of

12  said deposition.

13       I am not connected by blood or marriage with any

14  of the said parties, nor interested directly or

15  indirectly in the matter in controversy.

16       In witness whereof, I have hereunto set my hand

17  and Notary Seal this 7th day of January 2021.

18

19       _____

20       NATALIE C. WEBB - Court Reporter

21       Notary Public - State of Florida

22       Commission No. 162111

23       Commission Expires: 08/08/25

24

**65 (Pages 254 to 256)**