# EXHIBIT C

Volume:   I

Pages:   242

Exhibits: 10

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

C.A. No. 4:18-CV-40197-TSH

*************************************

CAMERON HOPKINS,

     Plaintiff,

v.

SEAN E. YI, JACKYMOON CORP.,

GREENMAN-PEDERSEN, INC., AND

HILL & SMITH INC.,

     Defendants,

J.H. LYNCH & SONS, INC.,

     Defendant/Third-Party

     Plaintiff,

v.

NORTHEAST TRAFFIC CONTROL

SERVICES, INC.,

     Third-Party Defendant.

*************************************

EDWARD CHASE, P.E.

**2**

1
2
3          DEPOSITION of EDWARD CHASE, P.E., a witness called
4   on behalf of the Defendant, taken pursuant to the
5   applicable Federal Rules of Civil Procedure, before
6   Laurie Donatella, a Court Reporter and Commissioner,
7   via Zoom, commencing on Friday, December 10, 2021, at
8   10:02 a.m.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**4**

1          A P P E A R A N C E S (cont.)
2
3   Shanna M. Boughton, Esquire
4   MCGLINCHEY SAFFORD
5   One Boston Place, 29th Floor
6   Boston, Massachusetts 02108
7   (857) 453-7151
8   sboughton@mcglinchey.com
9      COUNSEL FOR:  The Defendant
10
11   Amy Magher, Esquire
12   KIERNAN, TREBACH, LLP
13   40 Court Street, 3rd Floor
14   Boston, Massachusetts 02108
15   (617) 426-3900
16   amagher@kierantrebach.com
17      COUNSEL FOR:  The Defendant
18
19
20
21
22
23
24

**3**

1            A P P E A R A N C E S
2
3   Matthew M. Greene, Esquire
4   Timothy Wadman, Esquire
5   BOYLE SHAUGHNESSY LAW, P.C.
6   695 Atlantic Avenue
7   Boston, Massachusetts 02111
8   (617) 451-2000
9   mgreene@boyleshaughnessy.com
10   twadman@boyleshaughnessy.com
11      COUNSEL FOR:  The Defendant/
12      Third-Party Plaintiff
13
14
15   Benjamin R. Zimmermann, Esquire
16   SUGARMAN AND SUGARMAN, P.C.
17   The Prudential Tower
18   800 Boylston Street, 30th Floor
19   Boston, Massachusetts 02199
20   (617) 542-1000
21   bzimmermann@sugarman.com
22      COUNSEL FOR:  The Plaintiff
23
24

**5**

1            A P P E A R A N C E S (cont.)
2   Carli Buono, Esquire
3   GEORGES COTE LAW
4   235 Marginal Street
5   Chelsea, Massachusetts 02150
6   (617) 884-1000
7      COUNSEL FOR:  The Plaintiff
8
9   Christopher R. Howe, Esquire
10   CAMPBELL, CONROY & O'NEIL, P.C.
11   One Constitution Wharf, Suite 310
12   Charlestown, Massachusetts 02129
13   chowe@campbell-trial-lawyers.com
14   (617) 241-3000
15      COUNSEL FOR:  The Defendant
16
17   Thomas V. DiGangi, Esquire
18   COUGHLIN BETKE, LLP
19   175 Federal Street
20   Boston, Massachusetts 02110
21   tdigangi@coughlinbetke.com
22   (617) 988-8050
23      COUNSEL FOR:  Third-Party Defendant
24

**6**

1              I N D E X
2 WITNESS          DIRECT   CROSS   REDIRECT  RECROSS
3 EDWARD CHASE, P.E.
4 By Mr. Greene:        9
5
6
7              E X H I B I T S
8 NO.          DESCRIPTION              PAGE
9 1         CV - E. Chase              91
10 2        MassDOT Proposal           100
11 3        MassDOT Submittal - 10/28/2015     130
12 4        Original Traffic Control Plan      142
13 5        Request for Information            143
14 6        Revised Traffic Control Plan       144
15 7        Certificate of Compliance - 09/30/2015   163
16 8        Email Chain - 11/19/2015           171
17 9        U.S. DOT Decision - 05/03/2019     175
18 10       Report - 09/14/2020                200
19
20 (Exhibits retained by Court Reporter.)
21
22
23
24

**7**

1              P R O C E E D I N G S
2
3         EDWARD CHASE, P.E., after being
4         satisfactorily identified and duly sworn by
5         the Notary Public, was examined and
6         testified as follows:
7
8              MR. GREENE:  Ms. Donatella, do you
9    have an introductory read-on, or, or would you
10   like me to just address the points?
11             COURT REPORTER:  Oh, you, you -- oh,
12   I'm sorry.
13             MR. GREENE:  Different Stenographers
14   have done it different ways.  I, I -- some
15   have a -- an introductory paragraph regarding
16   the fact that we're doing this remotely.  But
17   if, if you don't, I'll, I'll just address it.
18   If I miss something, you can tell me.
19             COURT REPORTER:  Yeah, that's great,
20   Mr. Greene.  That'd be fantastic.
21             MR. GREENE:  Okay.
22             COURT REPORTER:  I don't have a
23   typical --
24             MR. GREENE:  Understood.  Do you

**8**

1    want to have the Parties introduce, introduce
2    themselves on the record?
3             COURT REPORTER:  Sure, that would
4    be, that would be great.
5             MR. GREENE:  Okay.  My name is
6    Matthew Greene, I represent G.H. --
7    J.H. Lynch.
8             MR. ZIMMERMANN:  Ben Zimmermann for
9    the Plaintiff, Cameron Hopkins.
10            MS. BOUGHTON:  Shanna Boughton for
11   GPI Engineering.
12            MS. MAGHER:  Amy Magher for
13   Defendant, Hill & Smith.
14            MR. DIGANGI:  Tom DiGangi for
15   Third-Party Defendant Northeast Traffic
16   Control Services.
17            MS. BUONO:  Carli Buono for
18   Plaintiff, Ramon Pereira.
19            MR. WADMAN:  And Timothy Wadman,
20   also for J.H. Lynch.
21            COURT REPORTER:  You're muted,
22   Mr. Howe.
23            MR. HOWE:  Sorry, Christopher Howe
24   on behalf of Defendants, Jackymoon Corp. and

**9**

1    Sean Yi.
2             MR. GREENE:  All right.
3
4             DIRECT EXAMINATION
5
6    BY MR. GREENE:
7    Q    Good morning, Mr. Chase.  How are you?
8    A    I'm fine.  How are you?
9    Q    I'm well, thank you.  I think it's safe to
10   assume you've been to a deposition before?
11   A    Yes.
12   Q    But we will get into --
13            MR. ZIMMERMANN:  Can we get --
14   BY MR. GREENE:
15   Q    -- your experience --
16            MR. ZIMMERMANN:  I'm sorry, Matt.
17   Are we -- can we just put the stipulations
18   on the record, if there are any?
19            MR. GREENE:  Yeah, of course.  I,
20   I will.
21            MR. ZIMMERMANN:  Okay.
22            MR. GREENE:  Sure.
23   BY MR. GREENE:
24   Q    Mr. Chase, I'm going to ask a series of

**3 (Pages 6 to 9)**

**EDWARD CHASE, P.E.**

190

1  Q    But I think the term you used was that the
2  pinning that was utilized here was
3  questionable.  I can check my notes, but do
4  you recall that?
5  A    I -- the -- I think that is fair.
6  Q    Okay.  What evidence are you relying on to
7  say that the pinning was questionable?
8  A    Well, there -- there's, there's a couple
9  things.  There's statements certainly by
10  the Lynch Project Superintendent that, that
11  talks about installing the barrier and not
12  having all the pins in place.  And then,
13  maybe installing it only at the ends.  I'm
14  not sure, if, if, you know -- I'm not sure
15  what that meant.  And, and so, I -- and
16  then, and then actually looking at the
17  photos of the crash and the, and the
18  barrier that had tipped over, certainly the
19  barrier never took -- tipped over, in, in
20      -- as during the, the TL-3 Level crash test
21  with the, the pickup truck.  But, but here
22  it tipped over.  And if you look closely at
23  the pictures, you just don't see many pins
24  at all.  So, I, I, I have to question, you

191

1  know, how the barrier was actually
2  installed.
3  Q    Well, you agree with me that Peter Boin
4  testified that the pins were installed as
5  specified?
6  A    Yeah, I think that was his intent.
7  Q    No, I'm asking about his testimony.
8  A    I'm, I'm not --
9  Q    He testified --
10  A    But --
11  Q    -- that it was pinned correctly?
12  A    -- but he all -- yeah, but he also --
13  there's also an email to the, the
14      Resident Engineer that's -- that, that --
15  that's not -- that, that may not be quite
16  supportive of that.  And then, thirdly,
17  the, the pins that don't appear to be in
18  the, in the photos.  And, and fourthly,
19  there's, there's, I think, testimony from
20  the Superintendent that he, he really
21  doesn't have an answer for why, you know,
22  the pins aren't there.
23  Q    Post-accident?
24  A    I'm sorry?

192

1  Q    Post-accident; he doesn't have an
2  explanation for why the pins aren't there
3  post-accident, correct?
4  A    Yes.
5  Q    Right; and you understand that this was a
6  fairly sizeable impact.  This was a
7      30,000-pound vehicle that impacted a
8  barrier, correct?
9  A    Well, it's a sizeable impact.  But, but
10  these are, what, 20-inch long, 1.25-inch or
11  so diameter steel pins with a flathead
12  washer on top.  And, and you know, they
13  don't, they don't just disappear in the
14  air.
15  Q    Well, what calculations have you performed
16  as to what conditions will cause the pins
17  to come out of the ground upon impact?
18  A    I'm not a, I'm not a barrier crash expert
19  and don't pretend to be.
20  Q    Right; and I'm not being facetious here.
21  I'm just trying to establish what you can
22  and cannot testify to.  You have no data
23  about what impact will cause the pins to
24  actually come out of the ground, correct?

193

1  A    Well, but what I, what I had observed with
2  -- actually onsite with the barriers that
3  had been removed from the project and the
4  pins that were bent, is it -- is it's --
5  does not seem reasonable to assume that
6  these bent pins would just come flying out
7  of the slot of the barrier.
8  Q    Right; but you're not an expert in what's
9  reasonable, correct?
10      MS. MAGHER:  Object.
11  A    I'm not an expert in --
12      MR. ZIMMERMANN:  I don't know
13  what that means.  Objection.
14  A    What?
15  BY MR. GREENE:
16  Q    You're here --
17  A    I don't --
18  Q    -- as an Engineering Expert.  You're here
19  as a Professional Engineer, correct?
20  A    That's correct.
21  Q    Right; and you've certified.  Your opinions
22  are given to a reasonable degree of
23  engineering certainty, correct?
24  A    Correct.

**49 (Pages 190 to 193)**

**EDWARD CHASE, P.E.**

234

1  that, that properly installed Zoneguard
2  would have redirected this truck, then
3  certainly two barriers would have been
4  double protection.  That's a no-brainer.
5  Q   Okay.  I appreciate that, Mr. Chase.  But I
6  want to parse that out a little bit,
7  because I think we've gone outside the
8  scope of your expertise and your opinion.
9  And I think, to be fair to you, you have
10  said you are not an expert in accident
11  reconstruction.  Is that right?
12  A   That's right.
13  Q   Okay.  So, you alluded to other
14     Accident Reconstruction Experts that have
15  been disclosed in this case, including your
16  brother, right?
17  A   Correct.
18  Q   But your opinions are not about the kinetic
19  energy or the forces at work.  Those aren't
20  calculations you put together, correct?
21  A   I did not put those together.  Those came
22  from crash reconstruction people.
23  Q   So your opinion in this fourth bullet point
24  is that the Contract, in your

235

1  interpretation, required installation of a
2  double row of barriers, correct?
3  A   Correct.
4  Q   As to whether or not the double row of
5  barriers would have constrained, or
6  contained, the tractor-trailer in this
7  accident, that is the opinion of an
8  Accident Reconstructionist, correct?
9          MR. ZIMMERMANN:  Objection.
10  A   Well, that is what is in their Report.  But
11  that's, that's also my opinion, based on
12  what I have read in their Report.  I would
13  agree with what I have seen through their
14  Report, makes sense to me.
15     BY MR. GREENE:
16  Q   Right; but you've already said you're not
17  an expert in accident reconstruction.
18  Whether you agree or not with an accident
19  reconstruction opinion, it's not your
20  expert opinion, correct?
21          MR. ZIMMERMANN:  I, I, I don't
22  understand the question.
23          MR. GREENE:  Well, he's not a
24  neurologist.  He can't say I agree with a

236

1  Neurologist's Report and therefore I'm
2  offering an opinion in neurology.
3          MR. ZIMMERMANN:  Yeah, I think
4  we're confusing two things, but --
5          MR. GREENE:  I'm not.
6     BY MR. GREENE:
7  Q   So, Mr. Chase, you agree with me.  And
8  look, I'm not trying to belabor the point.
9  You are here as an Expert Engineer.  You're
10  not here as an expert accident
11  reconstructionist, correct?
12  A   Correct.
13  Q   The exact calculation of whether or not a
14  different barrier system would have
15  contained the tractor-trailer in this case
16  is the subject of an
17     Accident Reconstructionist's opinion,
18  correct?
19          MR. ZIMMERMANN:  Objection,
20  that's not, that's not true.
21  A   No, I, I would not agree with that at all.
22     BY MR. GREENE:
23  Q   You would not.  So you've done --
24  A   No.

237

1  Q   -- the calculations.  And you have the
2  capability to analyze the impact severity
3  of an accident on your own and draw
4  conclusions as to exactly what a double row
5  of restrained barriers can contain?
6  A   No, but that's different from the question
7  that you asked me.
8  Q   Okay.  Then, let's stick with the last
9  question.  Will you agree with me that your
10  opinion is not --
11          MS. MAGHER:  Wait, I'm -- I can't
12  hear you.
13     BY MR. GREENE:
14  Q   Mr. Chase, you agree with me that your
15  opinion is not dealing with the exact
16  forces at work and what would have been
17  restrained, or contained, with a different
18  barrier system, correct?
19  A   Not the exact forces, but certainly
20  reviewing the, the crash test data.
21  Q   All right.  With regard to the fifth bullet
22  point: "If J.H. Lynch had installed the
23  restrained anchor system to conform to the
24  requirements of the manufacturer in

**60 (Pages 234 to 237)**

EDWARD CHASE, P.E.

242

1              C E R T I F I C A T E
2    COMMONWEALTH OF MASSACHUSETTS
3    COUNTY OF BRISTOL, SS
4        I, Laurie Donatella, a Professional Court Reporter
5    and Notary Public in and for the Commonwealth of
6    Massachusetts, do hereby certify that the foregoing
7    audio-visual deposition of EDWARD CHASE was taken before
8    me on December 10, 2021.  The said witness was
9    satisfactorily identified and duly sworn before the
10   commencement of their testimony; that the said testimony
11   was taken audiographically and then transcribed under my
12   direction. To the best of my knowledge, the within
13   transcript is a complete, true and accurate record of said
14   deposition.
15       I am not connected by blood or marriage with any of
16   the said parties, nor interested directly or indirectly in
17   the matter in controversy.
18       In witness whereof, I have hereunto set my hand and
19   Notary Seal this 14th day of December, 2021.
20
21
22
23
24

EDWARD CHASE, P.E.